Mr. Wright. Thank you, Your Honor. Good morning, Counselor, and may it please the Court. I am not here to argue a controversial proposition today. I don't get to say that very often, but I think that this is almost beyond controversy. Our position today is that Mr. Lipscomb should— We need to start the clock. And you need to speak up if you want it to be on the record. Absolutely, Your Honor. As I was saying, we are not here to argue a controversial proposition today, Your Honor. As a matter of fact— We're having trouble with the clock, so we'll just have to time it manually. Keep going. Okay. Two years—I see the clock is moving now. Two years, 11 months, and eight days, give or take a day or two, is what we're disputing here. And that sentence is the sum of two revocation judgments that were entered by the United States District Court for the Northern District of Texas. Those are judgments. We are not challenging an administrative action. We are the defendants in this criminal action. And it is the task of the judiciary to say what its decisions mean and what their effect is. We are not, at this point, questioning how those things should be interpreted by the Bureau of Prisons. What we are questioning is, number one, whether those judgments remain valid and binding against my client, and if so, whether they are substantively unlawful. I think the answer to the first question is no. I know that my friend on the other side of the bar also thinks that the judgments do not remain valid and binding. But so far, we only have the word of two underpaid government-employed attorneys on that question. We are asking for the court to say what the effect of those judgments are, rather than leave it to the wide discretion of Bureau of Prisons officials. But we're also underpaid. Yeah, what does that mean? I'd like to make it five instead of two. I was mostly joking. I'm just saying that what we don't have yet is something from the court. We don't have something from the Bureau of Prisons. What we have are two judgments that admittedly are in an unusual posture. So the theme of this case throughout has been, what do you do when one court performs an action that vacates an earlier judgment in the case, and then that action is itself vacated? Also, and I'll say the taxpayers probably don't think any of us are underpaid. You're probably right about that, Judge Wilson. But what's the right disposition? I mean, if I read the government supplemental briefing right, there's no case or controversy here. We don't know what's going to happen to Mr. Lipscomb when he serves the remainder of his 20-year term, but it looks like the current time served under the revocation judgments is credited against his reinstated longer sentence. So do we dismiss no rationale that the revocation judgments are superseded? What's the right disposition here? Your Honor, if the court agrees with the parties that those judgments are superseded effectively by intervening events, the court should say so. I mean, that's the most important thing. The court should say that that's the rationale for the decision. Now, your question is, what is the answer? I believe there is an Article III case or controversy here. We are certainly here fighting about these two judgments. The government has sufficient interest to come and as it did in its response brief, and Mr. Lipscomb has an extreme interest in correcting this now while he has the benefit of counsel and the benefit of three underpaid federal judges to look at the question rather than arguing with the people at his institution. Essentially, What happens if the Supreme Court says, no, no, no, no, not the 20-year sentence, it's the 10-year sentence? We're back to status quo ante and the revocation judgments are valid, or do we just go back to the drawing board period? Well, Your Honor, if you're asking me how it should be, I think status quo ante is correct. Previous events in this case have shown that, again, the courts do not always agree with me, or Bureau of Prisons officials don't, because that has happened once before in this case. This court ordered the district court to reinstate the original sentence of 240 months, which the district court did. We agreed that the court's mandate left no discretion for the district court at that time. Then the Supreme Court vacated this court's decision, its previous decision in the main appeal. Our position was, well, that should mean that we return to the status quo ante, which is the First Amendment judgment is now the one that's binding. The Bureau of Prisons didn't see it that way. The warden didn't see it that way. We filed a motion in district court that was opposed by the government and the district court did not rule on that motion until this court again reinstated the First Amendment judgment. And again, the Bureau of Prisons officials don't always take my word for what the effect of subsequent court actions is. I have something specific to point to. In this case, they did not treat the case as returning to the status quo ante. Now, that was because the district court effectuated this court's order by entering what we might call a Second Amendment judgment. It was the terms of the First Judgment, but it was a new judgment, because otherwise the Bureau of Prisons wouldn't have known to let Mr. Lipscomb back in the door, because, again, because of the computer system, they could only see the First Amendment judgment. So as I understand the process, the marshals typically, when they're transferring someone to Bureau of Prisons custody, enter the terms of the judgment into a computer system, then the Bureau of Prisons runs their calculations and goes forth from there. So I think that that is the right answer, that we should return to the status quo ante, that there are these two revocation judgments. But if that doesn't happen, the difference between Mr. Lipscomb and the government in this case is the government has already gotten more than their pound of flesh from him in that scenario. Everyone agrees that he has fully satisfied all three of those judgments, and he continues to accrue additional time incarceration today. So has the government ever suggested that it would make Mr. Lipscomb serve his post-revocation prison term after his reinstated sentence? Have they ever suggested that could or might happen? When you say the government, if you're talking about the U.S. Attorney's Office, the answer is no. They have not taken that position. In fact, they believe that it's superseded. However, the U.S. Attorney's Office does not want those judgments vacated. It wants them to remain in place. And this is not in the record, and it's not for attribution, but I personally communicated with Bureau of Prisons officials and asked that question. Because we wouldn't be here if they had said, don't worry about those revocation judgments. We can see that there's this other one. And the answer I got was, well, we don't know. Because you could see how someone could say you should not get off scot-free for these violations while you were on what was ultimately a premature supervised release. But I think to answer Judge Wilson's question in a way that may satisfy everybody, if the Court does agree that this action is moot or not yet ripe, because supervised release, as it turns out, has not lawfully begun, the Court should still vacate the orders below. That's what happens when a controversy is moot. One of the cases that the government cited, as a matter of fact, was Prizer v. Newkirk. You can see at the end of that opinion, page 403 and 404, they don't just dismiss the case at the Supreme Court, nor do they instruct the Court of Appeals to dismiss the appeal, which I think is what's contemplated by the question. They say, Court of Appeals, we're vacating your decision. Send it back to the District Court to dismiss the action. Now, we would love it if the District Court dismissed the entire criminal action, but I don't think anyone is advocating that. That's not likely. The Court can dismiss the two revocation petitions in that instance, because it turns out supervised release has not yet begun. All we're asking is that the judiciary say what the status of those two judgments is, and not leave it open to executive interpretation or misinterpretation. I have left the government's 28J. It had the number of days that he had served up to that point. I don't have it close at hand. He had done, so we know that we're dealing, um, I think he may have, like, two or three years left before he's eligible for, if, you know, good conduct are awarded, good conduct credits are awarded as expected, he would be eligible for release at that time. The exact number is on the paper as of the government's date attached to their 28J. I didn't bring that up with me. But he has some years left. Now, in terms of the fact that the Bureau of Prisons hasn't added the revocation judgments yet, that's good news. But when the Bureau of Prisons had performed a sentence calculation, I called them back and said, hey, good news, we all agree now, we can just not worry about these two revocation judgments and, you know, only focus on the main appeal. And I was told at the time, we have never looked at the revocation judgments. As a matter of fact, what revocation judgments, or are you telling us there are? And I said, well, no, I'm not, I'm certainly not going to ask them to go take a hard look at these two revocation judgments you might have missed. But the sentence computation sheet that the government attached to its 28J letter, as we point out in the remarks section, has dates where the person has worked on, people have worked on Mr. Lipscomb's calculation. And you will not see any events that happen after the revocation judgments. That, again, is my understanding of how we got into this situation of uncertainty. He was never transferred to Bureau of Prisons custody after those revocations. So the way that I understand the situation, we have two judgments, presumptively valid and binding judgments, if you just look at them on their face. No court has said that they are invalid or that they shouldn't be enforced yet, though we hope that you will. And what we have are, it just hasn't been forwarded yet. You know, the marshals have not entered that information into the computer. So the government says, well, if that ever happens, you have a remedy, you can file a 2241. My problem with that is I recognize there is much broader discretion for prison officials performing these computations, especially in a situation where the judgments are, shall we say, unclear, standing in and of themselves. So in other words, without a benefit from more words from this court or from the district court, there's nothing that tells them not to do it. Now, I think that's right, but I suspect that I will not be around or involved in the case were that to happen. What is the degree of management or control or supervision, if any, that the Attorney General has over the Bureau of Prisons? Well, I know the Bureau of Prisons is a component of the Department of Justice. I have shared some of the earlier filings that have been made in this case by the government. For instance, there's a footnote that says, by defending the judgment, the government is not looking at this. I said, hey, look at this. Can I just point to this or give it to my client and say if they ever do this? And they said not necessarily. Now, they're probably just trying to be careful, not trying to be too committed. But the thing is... Actually, of course, Mr. McKay maybe can address that question, too, when it's his turn. But I just wanted to... Right. So I know that you say this is not moot. If, on the other hand, we conclude that it's moot, then we would not have the power to vacate, right? Because there's no controversy for us to take action on. Oh, that's incorrect, Your Honor. I disagree with that. Not only would you have the power, I would say you have the obligation to vacate the two judgments below under the Munsingware... But if it's moot, there's no controversy, right? Right. That's the Munsingware doctrine, which is to say that when a case becomes moot while it's on appeal through no fault of the petitioner, we vacate the decision below so that the matter will be left open for the parties should it come up. And again, that is what happened in a decision that I cited in my supplemental letter brief. Alvarez v. Smith is another one that talks about sort of the default principle. So this is why I'm not going to put all my eggs in the not moot basket. It's fine if you say that it's moot, so long as either in saying the reason that it is moot is because those judgments can have no effect against him, because then it's word from the decision below, the two revocation decisions that are subject to appeal, because, like I say, either they are moot. That's an odd way to talk about revocations given that, you know, we expect supervised release will continue at the end of the original sentence. But you could also say it's not right. It turns out that he has not completed his original term of imprisonment yet, and so what business do we have fussing about terms of supervised release? So I think the Court would have the power and probably the obligation to do that if you were to determine that the appeal is moot, I would just say vacate the judgments below, undermunting where, without speaking to their merits. Now, it sounds like, at least, that the Court is not yet entertaining the argument that those judgments should be added to the end of it or could be lawfully added to the end of his judgment, and so I won't take up any more time today, unless the Court wants, talking about why, if they were to be added to the judgment, the numbers should be different or the district court should have an opportunity to say that they were different. But, again, that's assuming that what happens is that they are not added to the end of the judgment. What comes out of this proceeding, our hope, is something that precludes the Bureau of Prisons from doing that, and that is not a challenge to any Bureau of Prisons action as unlawful, as in a civil 2241. This is just asking an appeals court to speak to the validity of a judgment that we've properly brought before review with a timely notice of appeal. If the Court has no further questions at this time, I've reserved a little time for rebuttal. Yes, you have saved time for rebuttal. Thank you, Mr. Wright. Thank you. Good morning. May it please the Court. Brian McKay on behalf of the United States. Your Honor, Judge Clement answered your question. His projected release date at this time is March 2nd of 2027, so about four years away. This appeal is moot. As he pointed out, if the Supreme Court grants certiorari and gives him relief and flips the sentence back to 10 years, by his acknowledgment, this is moot. If, however, the Supreme Court keeps status quo in place, it's still moot because there is no ongoing case or controversy. Now, one of the things he points to is this possibility that I want to speak to the issue that BOP may have never seen these judgments. I would point the Court to, in particular, the sentence computation points to inoperable time, so time that he was actually on the street. And that inoperable time, it corresponds with when he was out on supervised release and when he was taken into custody on revocation of supervised release. In particular, I want to point out July 11th to October 22nd of 2018, it ties to record cite. And when I'm citing record, I'm in case number ending in 419. Pages 218 to 221, November 10th, 2018, until July 8th of 2019, pages 697 to 705, and, of course, September 13th of 2019 to February 12th of 2021. February 12th of 2021, of course, is about a month, almost two months after this Court held in the first government's appeal from the grant of 2255 relief, that the original sentence should be reinstated. And so BOP has accounted for this. And the notion that BOP is somehow unaware of these judgments, I think it's belied by the fact that between October 22nd and November 10th of 2018, that's less than 30 days, and yet Judge Lynn, during that time, imposed a sentence, a revocation sentence, of more than a year. Who authorized his release on November 10th, or actually, I think it was November 11th of 2018? It was the BOP that says, okay, now we understand what this revocation sentence is, and it's been credited against, at that time, what was considered over-served time. So BOP knows about this. At this time, as we stand here now, BOP knows about it, and they've given him credit for it, and they're continuing to give him credit for it. Doesn't he have a cognizable interest in making certain that he won't have to serve this time? It goes to mootness, of course. Certainly, certainly. And I would point the Court to Pricer, in which the Court says, yes, he can imagine a situation in which, in the future, somebody at BOP, looking at their stacks of regulations, may say, wait, I'm reading this in a different way, such that I think he should not get credit, and he should have to serve both. Is that a possibility? It is a theoretical possibility. But the fact that BOP currently knows about all this, and is crediting him, I don't think it's a realistic probability. And the Court said, in Pricer, the appellant has to imagine, you can't just simply imagine circumstances in which, in the future, he might be harmed. That's not present now. Even though we can imagine a situation where it might happen, it's very, very, very doubtful in this situation with BOP, with their current awareness. Certainly, the parties have been in touch with BOP legal counsel throughout this, and the fact that they continue to give him credit for this time, I think, underscores the fact that there is no actual case or controversy here. So why is the Department of Justice opposed to vacater here? I will say it this way. I don't think the Department is steadfastly opposed to the Court making clear that those judgments that have gone inactive, if you will, by mere fact of the reinstatement of the original judgment. I wouldn't perceive the Department of Justice as saying, Your Honors, Your Honors, absolutely, you should not do that in any instance. But as the appellant first raised this issue, yes, the Department is going to defend the judgments in place because the district judge, at the time she entered them, she had the authority, which is the way this appeal was raised. She had the jurisdiction to do this. I certainly did not want the Court to weigh in that somehow the Court was divested in retrospect of jurisdiction, and she didn't commit error, as it is in this appeal. The error occurred was a preceding error that was remedied in the other appeal. And so, yes, the Department had an interest in defending the district judge here and what she did and the judgments in place, but as we've raised more recently, it is moot because we agree those revocation judgments don't have an ongoing effect. So counsel opposite said that the general principle is in the case of something like this that's moot, we vacate the underlying judgments. I mean, I guess to paraphrase Judge Smith's question in reverse, why wouldn't we do that to tidy things up? Because then at the end of 2027 or whenever Mr. Lipscomb is done serving his time, if there's a revocation issue or what, then it's anew, right? It's fresh. So why wouldn't we clean this up in the process? And the Court can do that. I would say that the principle in Alvarez where the Supreme Court explained why it is that they do that, they do that to clear the path so that in that instance it was, you know, there had been declarations below in the lower courts as to what the party's rights were. If ever there were a path to clear, it's this one. I mean, just looking at the procedural tangled and all that, it just seems to me that even if we were to conclude that it's moot, we should clean it up. And the Court can do that. Under 2106, the Court has the discretion to enter, you know, what relief as justice may so require. And the Court can do that, but I don't believe it has to given the fact that nobody here believes that those judgments that went away along with the amended judgment given 10 years, nobody disputes the fact that they've gone away. They're not an impediment. There's no really path to clear. What if the Supreme Court reverses again? In that case, by his own admission, the case has gone moot and this appeal goes away. It's gone moot because he's already served his 10 years and he has served beyond what any revocation judgment has been. Regardless of the revocation judgments, he served the amount that was added after his sentence was revoked. I believe that's correct. I thought that's what you said. I believe that's correct, Your Honor. And so for this reason, the Court certainly has the discretion under 2106 to formally say these revocation judgments have no legal effect in the current posture of the case with the cert petition pending. But there is no ongoing case or controversy here. In your view, that would be an advisory opinion? I believe so, Your Honor, that if in the future BOP takes a different view, this is how the Court would see the case. That, to me, strikes of an advisory opinion. Well, how is it advisory if we say, the case is moot because when the original 20-year sentence was reimposed, the 10-year sentence plus the revocation judgments went away. They're of no effect. Don't we have to say why the case is moot and in doing so, don't we answer the question here? Well, in part, yes. I think that to say why the case is moot might require the Court to hold and see what the Supreme Court does with the cert petition because the reasoning of mootness, of course, depends on that. But in the Supreme Court keeps status quo in place, then this Court may certainly say, explain, this is why the case is moot. But as to declaring the rights, if you will, in the future, if BOP takes a different view, that, to me, sounds like an advisory opinion. Both of the parties here, Your Honor, Judge Smith, to your question of does the Attorney General have some exercise control over BOP, absolutely. And I don't want to pretend to speak on behalf of the stacks of regulations that BOP has for their sentence computations, but I will say that I've been in close contact with the Department through this as recently as Friday to make sure that the one that is consistent with what the Department want me to argue here. So with that, I do believe that the parties agree, he is getting credit for the time that he has actually served that he's entitled to. For that reason, we do not believe there is a case or controversy at this point in the appeal. Unless the Court has any additional questions, I would cede the rest of my time. Thank you, Mr. McKay. Thank you, Your Honor. Wright for Verbo. Thank you, Your Honor. And very briefly, there is a reason that all of the mootness cases about prisons and prison credits and so on have two last names in the case citation instead of the name of a state or a country. Because those are suits where the challenged action is an administrative action. So Bailey v. Sutherland, Adair v. Dritke, Prysor v. Newkirk, Spencer v. Kimna. If the action we were challenging were something that BOP did or didn't do, then yes, if the Bureau of Prisons had reversed it and had said this will have no other effect on the defendant, then I would have to agree. The case would certainly be moot. Prysor v. Newkirk, which is the case cited in the 28J and in the supplemental brief by the government, it was about a declaratory judgment. And of course, there's bigger concerns about mootness than with a direct criminal appeal. It is very unusual for a direct criminal appeal of a judgment to go moot. We are appealing revocation judgments, and the action we are complaining of is the entry of those judgments as written. And so that action has not been reversed. That's what we're asking for. Also, there was a memo in that case. If you look at pages 399 and at 402, the Supreme Court mentions a memo that prison officials said, not only have we moved him back to the medium security facility and transferred him to the minimum security facility where he's about to be paroled, but thou shalt not let this transfer affect his parole status or any other things. In other words, the prison officials had done what they haven't done in this case, which is to say we absolutely will not do that. Thou shalt not might happen afterwards. No such thing has happened here. In regards to whether the Bureau of Prisons has accounted for this or not, I will agree with my friend that the Bureau of Prisons has accounted for periods of presence and absence from official federal detention. But that is something separate from accounting for the judgments. So in other words, the sentence calculations are, there's a number that you add, and that is all of the sentences that are aggregated for the person to serve, and you calculate an aggregate term. And then there is, from that, you subtract. You subtract the number of days that someone served in custody, the prior custody credits, the good conduct time. And when those become equal, or heaven forbid the second number is larger than the first, they open the doors. I agree that the Bureau of Prisons has or Bureau of Prisons as a result of the revocation proceedings. What they haven't done, and I'm glad they haven't yet done, is add the two revocation judgments to the current aggregate judgment. That's what we're trying to preempt. I agree with you, Judge Smith. We do have a cognizable interest in having a court say, no, those should not be added to it. As to the possibility that these might be added to, or that if the court were somehow to prematurely vacate them as moved, the Supreme Court restores the status prior to the post-2255 status, the 120 month judgment. There are a couple of reasons why I think you don't have to worry about that, first of all, because again, the government's gotten more than it was entitled to under that state of affairs. So it's not like they lose in that scenario. Compare that to Mr. Lipscomb. If what we are worried about happens, he never gets the time back. It's time that he won't recover. It's much—the risk of an erroneous judgment is much worse for Mr. Lipscomb than it is for the government. That's number one. But number two, we are in this situation because of tactical decisions that the government made in the litigation. Mr. Lipscomb wanted everything to be sent back to the district court for a new sentencing hearing. Even post-ACCA, the court could have imposed a 15-year minimum sentence and then gone up from that based on things that have learned since sentencing. We could have done that. But the government opposed that very effectively. And the court would not allow us to go back to Judge Lynn to say, you know, exercise your discretion. Consider everything that has happened since the original sentencing in 2009 and exercise your discretion. So the same thing with the fact that we do not yet know precisely what the outcome is on the ACCA, these disputed issues. This case came off of a stay over our opposition, because we said these matters are still being litigated. Let's wait and see what happens, so that Mr. Lipscomb could be returned to prison. I mean, that was what the government wanted, and they achieved it. And so, in other words, there's a certain amount of, you know, that horse has left the barn already. You know, and it is not my fault that the horse left the barn. I didn't want it to. I didn't think we should open the barn door so early, but we did. For those reasons, Your Honor, we are asking you to vacate the two revocation judgments or make clear that they cannot be executed against my client in the current posture. Thank you, Your Honors. Thank you, Mr. Wright. Your case is under submission.